# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NICODEME WANKO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.  08-2115 (RJL) |
| | ) | |
| | ) | |
| CATHOLIC UNIVERSITY OF | ) | |
| AMERICA, DAVID M. O'CONNELL, | ) | |
| Rev., President, GEORGE CARVEY, | ) | |
| Vice-Provost, RANDALL OTT, Dean of | ) | |
| School of Architecture and Planning, | ) | |
| VYT GUERACKUS, Assistant Dean, | ) | |
| TERRY WILLIAMS, Professor, School | ) | |
| of Architecture and Planning, JUDITH | ) | |
| MEANY, Professor, School of | ) | |
| Architecture and Planning, SUZANNE | ) | |
| REATIG, Visiting Professor, School of | ) | |
| Architecture and Planning, AND | ) | |
| PATRICK SAAVEDRA, Visiting | ) | |
| Professor, School of Architecture and | ) | |
| Planning, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
(September 22, 2009) [# 5]

The plaintiff, Nicodeme Wanko ("Wanko"), alleges that Catholic University of America ("Catholic University" or "the University") and several individual faculty members discriminated against him. The defendants filed a Motion to Dismiss arguing Wanko failed to state a claim on which the Court can grant relief. After reviewing the pleadings and record, this Court GRANTS the defendants' motion.

# BACKGROUND

Wanko, born in Cameroon, Africa, studied engineering and architecture at Catholic University starting in 2002. (Compl. [Dkt. #1] ¶¶ 11, 14, 16.) In March 2006, after instructors dropped Wanko from a course and he failed two other courses, (*see id.* ¶¶ 21, 30, 32), he was dismissed from the University, (*see id.* ¶¶ 30, 32, 35). In his complaint, Wanko focuses on four events that occurred before his dismissal.

First, Wanko alleges his instructors "discriminated" against him in a Spring 2005 architecture class. Wanko also vaguely alleges defendant Judith Meany and defendant Suzanne Reatig complained about his accent, insulted him, "criticiz[ed] [his] proposal on preconceived racial beliefs," and "creat[ed] an overall hostile learning environment" before eventually dropping him from the course. (*Id.* ¶¶ 18–21). As a result, Wanko complained of race and national origin discrimination to defendant Vyt Guerackus, the Assistant Dean of the School of Architecture and Planning. (*Id.* ¶¶ 22–23.) Vyt Guerackus met with Wanko to discuss his complaints. (*Id.* ¶ 24.) Wanko does not provide details of the meeting, alleging only that the instructors Meany and Reatig did not attend. (*Id.*)

Second, in the Fall of 2005, Wanko re-enrolled in the architecture class, which was being taught by Defendant Patrick Saavedra. (*Id.* ¶¶ 27–28.) Wanko does not plead details of his academic performance, only that he failed the course. (*Id.*) Wanko alleges Saavedra met with him at the end of the semester to inform him of his failing grade. (*Id.*

¶¶ 29–30.) Wanko broadly alleges Saavedra scheduled this meeting, which was held off campus at 7:00 p.m., "expect[ing] to provoke an uncontrolled reaction from Plaintiff that could be recorded and subsequently used for Plaintiff's disciplinary expulsion." (*Id.* ¶ 31.) Wanko however does not elaborate on this assumption, contend that the meeting was recorded, or even assert that meetings were generally held at a different time or location.

Third, Wanko alleges that although he initially received a B in the course, his grade was changed, two years later, to an F. (*Id.* ¶ 32.) Wanko alleges no one informed him that he failed to complete an assignment or of the possibility that his grade would be changed, despite his meeting with a member of the administration few times each semester. (*Id.* ¶ 34.) Wanko also alleges his grade was changed at a time when he was no longer able to receive a tuition refund for the 2006 spring semester. (*Id.* ¶ 33.) Wanko further alleges that Williams, the professor of the course, stated he changed Wanko's grade because Guerackus, an assistant dean, requested the change. (*Id.* ¶ 38.)

Finally, Wanko alleges that the defendants "conspired" to retaliate against him because of his discrimination complaints. (*Id.* ¶ 25.) In support of this allegation, Wanko asserts that while Catholic University scheduled a meeting to discuss his discrimination allegations, the University did not take any other action in response to his complaints. (*Id.* ¶ 24.) Wanko also points out that the dean allegedly did not transfer academic credits to Catholic University's architecture school that Wanko had either earned in Catholic

University's engineering school or at the University of California–Los Angeles. (*Id.* ¶ 26.)

In March 2006, Catholic University dismissed Wanko. (*Id.* ¶ 35.) Wanko filed a complaint in this Court in December 2008, alleging six causes of action and naming as defendants Catholic University; University President Rev. David M. O'Connell; Vice-Provost George Carvey; deans Randall Ott and Vyt Guerackus; and professors Judith Meany, Suzanne Reatig, and Patrick Saavedra. Wanko also claimed losses exceeding one million dollars. (*Id.* ¶ 40.)

## STANDARD OF REVIEW

The defendants move to dismiss Wanko's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (*see generally* Def.'s Mot. to Dismiss [Dkt. #5]), contending it fails to state a claim upon which the Court can grant relief. A plaintiff's complaint need only set forth a short and plain statement that gives defendants fair notice of the claim and grounds upon which the complaint rests. *Dave v. Lanier*, 606 F. Supp. 2d 45, 48 (D.D.C. 2009). In resolving a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007). "While a complaint need not contain detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.'" *King v. Pierce Assoc., Inc.*, 601 F. Supp. 2d 245, 247 (D.D.C. 2009) (quoting *Bell Atlantic Corp.*, 550 U.S. at

555).  A complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Bell Atlantic Corp.*, 550 U.S. at 555) (internal alterations omitted).

## ANALYSIS

Wanko alleges five causes of action based on the allegedly discriminatory conduct discussed above: (A) discrimination and retaliation under Title VI of the Civil Rights Act of 1964, (B) breach of contract, (C) fraud, (D) intentional infliction of emotional distress, and (E) negligence.  In each case, he utterly fails to make the minimal showing necessary to avoid dismissal.  How so?

### A.    Title VI

Title VI of the Civil Rights Act of 1964 ("Title VI") prohibits federally assisted programs, such as educational institutions receiving federal funds, from discriminating on the basis of race, color, or national origin.[1]  42 U.S.C. § 2000d.  Catholic University receives federal funds and is thus subject to the requirements of Title VI.  (*See* Compl. ¶¶ 42–43; *see also* Def.'s Mem. in Support of Mot. to Dismiss [Dkt. #5-2] at 6–7 (failing to contest that Title VI does not apply to Catholic University)).  However, because Title VI applies only to programs that receive federal funding, the individual defendants cannot be held liable for any Title VI violations.  Therefore, any Title VI claim Wanko has raised

---

[1]Specifically, Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program receiving Federal financial assistance."  42 U.S.C. § 2000d.

against the individual defendants must be and is dismissed. *See, e.g.*, *Shotz v. Plantation*, 344 F.3d 1161, 1169 (11th Cir. 1996); *Buchanan v. Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996); *Silva v. St. Anne Catholic Sch.*, 595 F. Supp. 2d 1171, 1179 (D. Kan. 2009).

### i.   Discrimination Claim

Wanko seems to allege, albeit vaguely, that Catholic University intentionally discriminated against him because of his race and national origin in violation of Title VI. (Compl. ¶ 45.)  Indeed, Wanko merely alleges that defendants criticized his accent, insulted him, criticized his proposal, failed to transfer credits, gave him failing grades, and caused him to fail out of Catholic University.  Wanko also seems to suggest that wrongdoing is evinced by the defendants' notifying Wanko of a failing grade in a meeting that was held off-campus and at 7:00 p.m. (*See* Compl. ¶ 31.)

Stated simply, Wanko has merely pled "labels and conclusions" and not a factual basis sufficient to avoid dismissal. *See King*, 601 F. Supp. 2d at 247 (internal quotation omitted).  He does not specify how he was criticized and insulted, when such criticisms occurred, or their relationship, if any, to his failing classes or failing out of Catholic University.  Tellingly, Wanko also does not even allege that he complied with the school's academic requirements or that, absent any alleged discrimination, he would have had more academic success.  Similarly, he alleges the dean did not transfer his credits, but he does not allege that his credits were eligible for transfer or that the dean failed to adhere to the school's policy or practice for transferring credits.  He also does not offer

6

any evidence to support his broad allegations that the defendants conspired against him or that the defendants set up a meeting intending to provoke him. Instead, Wanko provides only conclusory inferences, which the facts in the complaint fail to support.

To say the least, discrimination can not be inferred from such a dearth of evidence. *See Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 79 (D.D.C. 2003) (noting that even if the university's actions were unfair, there was no evidence upon which to logically infer a discriminatory purpose). This is especially true in light of Wanko's failure to allege that he complied with the University's academic standards. This Court will not "second-guess an educational institution's application of its own academic standards and procedures" absent evidence indicating the absence of a rational basis or the presence of an illegal motive. *Id.* at 80. Accordingly, the Court must and will dismiss his discrimination claim.

### ii.    Retaliation Claim

Wanko also raises a retaliation claim against Catholic University based on its failing to address his discrimination complaints, failing to evaluate him according to his merit, and devising a scheme to flunk him out of the University. (Compl. ¶ 46.) While Title VI does not specifically prohibit retaliation, some judges in this district have recognized that such a prohibition is implicit in Title VI's prohibition of intentional discrimination. *See Kimmel v. Gallaudet Univ.*, No. 07-797, 2009 WL 2386175, *5 (D.D.C. Aug. 4, 2009) (analyzing, at length, whether Title VI contains an anti-retaliation

provision and concluding that it does); *Chandamuri*, 274 F. Supp. 2d at 81–83 (same).

However, because Wanko has failed to plead sufficient facts suggesting Catholic

University retaliated against him, the Court need not decide this issue. The retaliation

claim, even if eventually viable under Title VI, must be dismissed "because his complaint

demonstrates that he will not be able to establish a causal connection between [the]

lodging his complaint . . . and his sanction." *See id.* at 84.

### B.    Breach of Contract

Wanko also alleges, based on District of Columbia law, that the University and the

individual defendants violated a contract with him when they failed to provide him with

an education free from discrimination, failed to evaluate him based on his merit,

discriminated against him, and conspired to fail him. (Compl. ¶¶ 49–52.)   While

Wanko's relationship with the University is "contractual in nature," *Basch v. George*

*Washington Univ.*, 370 A.2d 1364, 1366 (D.C. 1977), that relationship does not extend

beyond him and the University itself. *See Manago v. District of Columbia*, 934 A.2d 925,

926–27 (D.C. 2007).   Therefore, the individual defendants are not proper defendants for

Wanko's breach of contract claim and that claim will be dismissed as to them. *See id.*

Thus, this Court will only considers the merits of Wanko's breach of contract claim as it

pertains to Catholic University.

Unfortunately for Wanko, he does not make any allegation that the University

promised to provide anything him more than it was already obligated to provide him

under Title VI.  Therefore, Wanko's breach of contract claim against Catholic University

fails, among other reasons, for want of consideration.  *See Di Lella v. Univ. of Dist. of*

*Columbia*, 570 F. Supp. 2d 1, 11 (D.D.C. 2008).  In addition to an agreement as to all

material terms, and an intention of the parties to be bound, an enforceable contract also

requires a mutuality of obligation, which "exists when each party undertakes to do

something the party is otherwise under no legal obligation to do.  A promise to perform a

pre-existing legal obligation does not create a mutuality of obligation and cannot give rise

to an enforceable contract."  *Id.* (internal quotation and citation omitted).[2]  This Court,

therefore, must and will dismiss Wanko's breach of contract claim.

### C.     Fraud

Wanko also brings a cause of action for fraud based on the defendants' alleged

misrepresentations that they would evaluate him according to his merit and not

discriminate against him, (Compl. ¶¶ 54–58), and that the grades and academic credits he

earned in Catholic University's engineering school and at the University of

California–Los Angeles would be transferred to Catholic University's architecture and

planning school, (*id.* ¶¶ 26, 57).  Wanko further alleges the defendants made these

---

[2]Wanko relies on *Booker v. Grand Rapids Medical College*, a case decided by the Supreme Court of Michigan in 1909, for his assertion that students paying tuition have "an implied understanding that [they] shall not be arbitrarily dismissed therefrom."  156 Mich. 95, 99–100 (Mi. 1909).  This case, however, was decided well before Title VI was enacted and does thus not address Catholic University's pre-existing obligation, under Title VI, not to discriminate against Wanko.  *See* Title VI of the Civil Rights Act of 1964, Pub.L. 88-352, 78 Stat. 241 (enacted July 2, 1964).

misrepresentations with the intent that Wanko would rely on them by enrolling at Catholic University. (*Id.* ¶¶ 59–60.)

District of Columbia law provides a cause of action for fraud for plaintiffs who "make a prima facie showing of (1) a false representation, (2) in reference to a material fact, (3) made with the knowledge of its falsity, (4) with intent to deceive, and (5) action taken by the plaintiff in reliance upon representation, (6) which consequently resulted in provable damages." *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 237 (D.D.C. 2007) (internal quotation omitted). Additionally, plaintiffs alleging fraud must comply with a heightened pleading requirement. Specifically, federal rules require plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs must detail the fact misrepresented, the time, place, individuals involved, and content of the misrepresentation, and what was retained or given up as a result. *United States* ex rel. *Williams v. Martin-Baker Aircraft Co., Ltd.* (ex rel. *Williams*), 389 F.3d 1251, 1256 (D.C. Cir. 2004). To say the least, Wanko has utterly failed to meet this standard.

Wanko does not provide any of the necessary specifics, offering instead only unsupported "nebulous[] alleg[ations]" to support his claim. *See id.* at 1256–57 (affirming dismissal of a fraud claim because misrepresentations were alleged "nebulously" and because the plaintiff did not allege with particularity when the representations were made). Indeed, Wanko provides no details of any alleged

10

statements. He does not provide dates for the alleged misrepresentations, making only vague references to the Spring 2005 semester and the 2006 school year. (Compl. ¶ 55.) Wanko does not specify which defendants were involved in each misrepresentation and does not explain their individual roles in the alleged fraud. (*Id.* ¶¶ 55–59); *see* ex rel. *Williams*, 389 F.3d at 1257 (noting the complaint fails the particularity requirement because it "fails to identify with specificity who precisely was involved in the fraudulent activity").

In essence, Wanko merely relies on *Buccino v. Continental Assurance Co.* to support his claim. 578 F. Supp. 1518 (S.D.N.Y 1983). Although the District Court in *Buccino* declined to dismiss a fraud complaint that was "not as precisely pleaded as it should have been," and relied on information outside the complaint to provide the specifics lacking in the complaint, this Court will not eviscerate the Federal Rules of Civil Procedure's particularity requirement merely because another court—outside our Circuit, in a footnote, absent support no less—was unwilling to dismiss a non-particularized fraud complaint.

The bottom line is clear, Wanko's complaint here fails to "state with particularity" the circumstances constituting fraud, *see* Fed. R. Civ. P. 9(b), and fails to give the defendants sufficient information to answer his complaint. *See* ex rel. *Williams*, 389 F.3d at 1256. Thus, this count must also be dismissed.

### D.    Intentional Infliction of Emotional Distress

Next, Wanko brings a cause of action for intentional infliction of emotional distress under District of Columbia law, alleging that the defendants' criticism of his accent and proposal, change in his grade, and various other insults to him  constitutes "extreme and outrageous" conduct. (Compl. ¶¶ 63–65.) Intentional infliction of emotional distress requires, however, among other elements, "extreme and outrageous conduct," which is a "requirement [that] is not an easy one to meet." *Ben-Kotel v. Howard Univ.*, 156 F. Supp. 2d 8, 14 (D.D.C. 2001). "[A] defendant will be liable 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991) (quoting Restatement (Second) of Torts § 46 cmt. D (1965)). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1994).

Defendants' alleged conduct in this case, if true, is not of such a nature that a reasonable person would consider it to be "outrageous" or "beyond all possible bounds of decency." *Bernstein*, 649 A.2d at 1075 (internal quotation omitted); *Allison*, 209 F. Supp. 2d at 61–62 (finding a university's approving a plaintiff's failing grade, expelling her from school, denying her readmission applications, and failing to acknowledge a temporary disability does not constitute extreme and outrageous conduct); *Kerrigan v.*

*Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. App. 1997) (finding that

targeting plaintiff for a sexual harassment investigation, manufacturing evidence against

him to establish a false sexual harassment claim, leaking information from the

investigation to other employees, and unjustifiably demoting him to promote a woman

does not constitute extreme and outrageous conduct); *Manago*, 934 A.2d at 925, 928

(holding that a university's failing to provide an accommodation for an alleged disability,

refusing to allow a student to take a final exam, advising her to withdraw from the

program, and refusing to sign an application to certification examination do not constitute

extreme and outrageous conduct).  Thus, having failed to plead facts that if believed

could support an intentional infliction of emotional distress claim, the Court must and will

dismiss this claim as well.

E.      **Negligence**

Finally, Wanko alleges that five of the individual defendants[3] were negligent in

failing to remedy alleged discrimination against him.  (Compl. ¶¶ 67–69.)  The plaintiff in

a negligence action must establish: (1) that the defendants owed him a duty of care, (2)

that the defendants breached that duty, and (3) that the breach proximately caused damage

to the plaintiff.  *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984).  A

plaintiff's negligence claim "may not rest on mere conclusory assertions as to the

existence of any element of the claim, including duty."  *Jolevare v. Alpha Kappa Alpha*

---

[3]Defendants O'Connell, Carvey, Ott, Guerackus, and Williams.

*Sorority, Inc.*, 521 F. Supp. 2d 1, 15 (D.D.C. 2007) (internal quotation omitted).  Wanko, however, merely relies on unsubstantiated conclusory assertions to support his negligence claim.  It is not enough.

Wanko alleges vaguely that the defendants "owed Plaintiff a duty to ensure that he was treated equally and not discriminated against as a student at Defendant Catholic University," (Compl. ¶ 67).  He does not, however, alleges any basis for this purported duty, and this Court does not find one.  Title VI cannot serve as a basis for any individuals' duty, as the statute applies only to programs receiving federal funding.  42 U.S.C. § 2000d.  As Wanko has failed to plead a legal basis for the duty supposedly owed him by these defendants, his negligence claim must also be dismissed.  *See Allison*, 209 F. Supp. 2d at 61–62 (dismissing negligence claim because the plaintiff failed to articulate the applicable standard of care or how defendants deviated from that standard).

## CONCLUSION

For all of the above reasons, the Court GRANTS the defendants' Motion to Dismiss.  An Order consistent with this conclusion accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

14